UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY KEE,<br><br>    Plaintiff,<br><br>    v.<br><br>JOANNA SAGERS, et al.,<br><br>    Defendants. | Case No. 15-cv-05056-RS<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND** |

## I. INTRODUCTION

This action finds its roots in proceedings that began in the Third Judicial District Court in Salt Lake City, Utah. On December 12, 2011, a Utah state court judge issued a divorce and child-custody decree dissolving *pro se* plaintiff Jeremy Kee's marriage to his former spouse, Whitney Lovejoy. Kee and his ex-wife had joint custody over their two children, but in August 2013, Lovejoy dispatched their son to live with Kee in California. Kee moved to modify the divorce decree to reflect the new situation, but following a pivotal hearing in May 2014, lost custody of both of the children. A year later, Lovejoy registered the Utah child support order in the Sonoma County Superior Court. That led the Sonoma County Department of Child Support Services ("SCDCSS") to proceed with enforcement. Frustrated by having to pay child support even though he was caring for one of his children, Kee commenced this action. He brings claims against virtually all of the players involved in his custody proceedings for constitutional violations he allegedly suffered over the preceding three years. The instant motion to dismiss is brought by the Sonoma County employees responsible for enforcing the child support order. They argue this Court lacks jurisdiction, they are immune from suit, and that Kee fails adequately to plead his claims for relief.

Pursuant to Civil Local Rule 7-1(b), the motion to dismiss is suitable for disposition without oral argument, and for the reasons set forth below, will be granted without leave to amend. At bottom, Kee seeks nothing more than a de facto appeal of a Utah state court order signed on May 27, 2014. His claims accordingly are barred by the jurisdictional barrier of the *Rooker-Feldman* doctrine.

## II. FACTUAL BACKGROUND[1]

On December 12, 2011, a Utah state court judge issued a divorce and child-custody decree dissolving Kee's marriage to his former spouse, Lovejoy, and imposing child-support obligations. Kee and his ex-wife had joint physical and legal custody over their two children—JTK, a boy, and BRK, a girl. In August 2013, however, Kee avers Lovejoy left JTK with Kee in California, which he contends was legal abandonment. Subsequently, Kee sought to enroll JTK in school via a temporary restraining order, and filed a motion to modify the divorce decree to reflect the new situation. Lovejoy filed a counterclaim seeking full custody of both of the children, and Joanna Sagers, a Utah state court commissioner, was assigned to take up the case. Following a hearing on May 22, 2014, Sagers recommended Kee be held in contempt for refusing to disclose his address, failing to pay child support, and failing to pay the judgment contained in his original divorce decree. Sagers further advised Lovejoy be awarded sole legal and physical custody of both children, and that JTK be returned to Salt Lake City, with possible criminal sanctions for non-compliance.

---

[1] The factual background is based on the averments in the complaint, which must be taken as true for purposes of a motion to dismiss. Additionally, the Sonoma defendants' request for judicial notice is granted, as the materials are consistent with Rule 201 of the Federal Rules of Evidence. Perhaps in response to defendants' request, Kee attached twelve exhibits to his opposition brief. *See* Opp'n Exs. A–L. Kee's submission will be construed as a request for judicial notice, and will be granted only as to exhibits A, G, and L, as they are public records whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings). Exhibits A, B, D, J, and K, however, may nonetheless be considered because they are incorporated by reference into the complaint. *See* Compl. ¶¶ 10, 30, 31, 33; *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Finally, Kee attached various exhibits to the complaint itself, which properly may be considered when assessing the motion to dismiss. *See Hal Roach Studios. Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Five days later, on May 27, 2014, Judge Chon of Utah's Third Judicial District signed an order adopting Sagers' recommendations.  Specifically, the court ordered that (1) Lovejoy be awarded sole legal and physical custody of both children, (2) Kee pay child support of $1,211.00 per month, (3) JTK be put on a plane and returned to Lovejoy's custody in Salt Lake City, (4) a Writ of Assistance issue if JTK is not returned, (5) Kee be denied parent time until he provides his home address, (6) Kee pay overdue child support, (7) the judgment against Kee be offset by an amount equal to one-half of the medical/dental expenses incurred, and (8) judgment be entered against Kee in the amount of $16,991.50.  The order was approved as to form by Kee's counsel, Gerald M. Salcido, as well as the attorney appointed Guardian ad Litem, Marco Brown.  The order was filed in Utah state court on June 2, 2014, and judgment was entered against Kee and for Lovejoy on that same day.  Kee denies the recommendations ever were reduced to a noticed and signed order, and maintains neither he nor his lawyer ever received notice of any order besides the original divorce decree.

About a year later, in May 2015, Lovejoy registered the Utah state court order with the Sonoma County Superior Court—the jurisdiction to which Kee elected to move following his divorce proceedings.  Both the superior court and SCDCSS informed Kee the order had been established, and detailed his right to challenge the validity of the order—an opportunity Kee failed to embrace.  As best as can be deciphered from Kee's complaint, SCDCSS then enforced the decree by seizing Kee's accounts, suspending his driver's license, threatening arrest, and contacting JTK.

Frustrated, though undaunted, Kee avers he began filing complaints in March 2015, including a "Motion to Strike Order" filed in Utah state court in April of that year.  Seemingly exasperated by his inability to obtain a hearing or relief of any kind in Utah state court, Kee brought the instant action on November 4, 2015.  Kee names as defendants virtually the entire cast of characters involved in his custody proceedings, including Su Chon, the Utah state court judge, Joanna Sagers, the Utah state court commissioner, Brent Johnson, a Utah state court administrator, Michele Christiansen, the alleged chairwoman of Utah's commissioner complaint review board,

Rebel Smith, Heidi Trujillo, and Liesa Stockdale, employees of the Utah Department of Human Services ("UDHS"), Virginia Sudbury, an attorney who appeared on Kee's behalf in Utah state court (collectively with all previous defendants, the "Utah defendants"), the Sonoma County Department of Child Support Services, Jennifer Trauman, Director of SCDCSS, and Marisa Wood, Rosie M. Soto, and Elizabeth A. Ryan, alleged "agents" of SCDCSS (collectively with the entity, the "Sonoma Defendants").

Kee brings four claims, directed at all defendants collectively, for alleged violations of his constitutional rights. He contends in particular that Sagers threatened to arrest him without any legal basis. He also avers Utah and California afford fewer protections to male parents than female parents caring for abandoned children. In addition, Kee claims all defendants summarily violate constitutional rights by maintaining a policy of seizing the assets of parents supporting abandoned children. Finally, Kee avers the defendants conspired with his ex-wife to facilitate the "court sanctioning [of] the legal abandonment of a child." Compl. ¶ 28.

The Sonoma County defendants filed a motion to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Kee then filed an application for a temporary restraining order ("TRO") and sought an entry of default. Kee's application was denied on December 8, 2015, and the default was denied the next day.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

As an initial matter, defendants assert the *Rooker-Feldman* doctrine deprives this Court of jurisdiction over Kee's claims. The *Rooker-Feldman* doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Reusser v. Wachovia Bank*, 525 F.3d 855, 859 (9th Cir. 2008) (citation and quotations omitted); *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923). "To determine whether an action functions as a de facto appeal, we 'pay close attention to the *relief* sought by the federal-court plaintiff.'" *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012) (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)). Indeed, the "clearest case for dismissal based on the *Rooker-Feldman* doctrine occurs when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Reusser*, 525 F.3d at 859.

Here, Kee's complaint is replete with allegations evincing his injury is an allegedly

erroneous order of the Utah state court. Kee's first claim complains Commissioner Sagers threatened his arrest without legal authority, and asserts he was stripped of custody despite a Utah rule that prohibits modifying a divorce decree in an order to show cause hearing. Setting aside the validity of Kee's contentions, these alleged injuries flow directly from the Utah state court order. Kee's next claim, though styled as an equal protection violation, highlights as its basis that the Utah state court "denied [his] objections, motions, [and] verbal requests for telephonic appearance." Compl. ¶ 14. While the claim on its face seems to assert a possible constitutional injury, in substance it quarrels with the decisions entered in the earlier Utah proceedings. Kee's third claim asserts defendants punish parents supporting abandoned children by seizing accounts, suspending licenses, and robo-calling the abandoned child. This is nothing more than a complaint that enforcement of the child support order was wrong because the Utah state court ruling precipitating enforcement itself was decided erroneously. Kee's final claim asserts all defendants "willfully denied all objections properly served" on his ex-wife's attorney, Compl. ¶ 34, and "high jacked" "plaintiff's hearing[] for [a] motion to strike counterclaim" that occurred in Utah state court, *id.* ¶ 35. Just like the others, this claim collaterally attacks the prior Utah proceedings.[2]

Turning to the relief Kee requests, the complaint demonstrates he seeks invalidation of the Utah state court order. Specifically, Kee asks this Court to hold "that the only valid enforceable order signed by a judge and provided to all parties in compliance with the rules of civil procedure is the joint custody agreement signed by both parties and a judge in December 2012." Compl. at 15:10–15. He requests, in other words, the May 27, 2014, order be declared invalid. Bolstering that interpretation, Kee demands an order "that the state of Utah has no jurisdiction on a child

---

[2] Were it not plain from Kee's complaint that he asserts as his injury legal error by the Utah state court, Kee's brief in opposition removes all doubt about the source of his present grievances— "[t]he reason plaintiff filed suit herein is clear: the Utah Courts, and their proxies in California, are so biased against plaintiff that he will never get a fair hearing in Utah." Opp'n at 12:2–7. Kee adds that "[d]efendants fail to provide any evidence that a state court ruling from May 22, 2014 is *not* unlawful," Opp'n at 15:20–21 (emphasis added), suggesting his efforts are aimed at demonstrating here the ruling in fact was unlawful. Lastly, Kee's opposition describes the Sonoma defendants' wrongdoing as an attempt "to enforce a support order against Plaintiff which they knew to be *fatally defective*." Opp'n at 6:3–5 (emphasis added).

legally abandoned in California." Compl. at 15:15–16.  Finally, Kee asks (in contravention of the Utah state court ruling) that his child support obligation be suspended. Compl. at 15:3–5.

In sum, Kee "asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Reusser*, 525 F.3d at 859.  The *Rooker-Feldman* doctrine accordingly divests this Court of jurisdiction over his de facto appeal.

**B. Kee's Claims are Inextricably Intertwined with his De Facto Appeal**

The *Rooker-Feldman* doctrine not only prohibits a plaintiff from litigating the de facto appeal, but also any issue "inextricably intertwined" with the state court's order. *See Cooper v. Ramos*, 704 F.3d 772, 778–79 (9th Cir. 2012).   A claim is "inextricably intertwined" with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it," i.e., "[w]here federal relief can only be predicated upon a conviction that the state court was wrong." *Id*. at 779 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987)).  To the extent Kee's claims exist apart from his de facto appeal of the Utah state court order, they nevertheless are barred because they are inextricably intertwined with the Utah rulings.

As noted above, Kee's first claim, styled as a "constitutional tort" for "Due Process/Malicious Prosecution/Abuse of Power," complains that Commissioner Sagers threatened Kee with arrest and stripped him of custody without legal authority. *See* Compl. ¶¶ 8–9.  The Utah state court order issued on Sagers' recommendation indeed threatened sanctions for non-compliance.  Kee's claim then is intertwined with his de facto appeal because it can succeed only insofar as the Utah state court order was wrong.[3]

Kee's second claim asserts a violation of the Equal Protection Clause of the Fourteenth Amendment.  His theory is that Utah and California (neither of whom are defendants in this action) afford fewer protections to male parents than female parents who are caring for abandoned children.  The complaint, however, reveals this allegation simply to be a veneer.  Kee's true

---

[3] At various points in the complaint, Kee transitions from challenging the May 2014 order to simply denying it was issued.  Given judicial notice has been taken of the May 2014 order, the latter position is untenable.

argument is that males must be suffering discrimination because the Utah court ruled in Lovejoy's favor when it "denied [his] objections, motions, [and] verbal requests for telephonic appearance." Compl. ¶ 14. Though nominally styled as an equal protection violation, in substance this claim is nothing of the sort. In any event, his standing is contingent on finding that Commissioner Sagers' rulings either were unlawful or lacked justification. As such, this count cannot proceed as it inextricably is intertwined with the Utah state court judgment.[4]

Kee's third claim is styled as a "custom, policy and practice civil rights violation." He avers SCDCSS has a de facto policy summarily to violate constitutional rights by seizing the assets and suspending the licenses of parents caring for legally abandoned children. This claim is intertwined with his de facto appeal because the sole basis for the allegation is the unsupported assertion that he was wrongly treated this way in his particular case. Kee has been injured, in other words, only insofar as Judge Chon wrongly decided the issues before her. His nominal civil rights claim accordingly is barred as a collateral attack on an unfavorable state court ruling.[5]

Kee's final claim is styled more plainly as an assortment of "torts." Specifically, Kee avers the defendants conspired with his ex-wife "to provide her court documents, [to] assist her in filling them out, and [to] sign a registration form to initiate enforcement and seizure of accounts." Compl. ¶ 32. Kee further insists all defendants "willfully denied all objections properly served" on his ex-wife's attorney, Compl. ¶ 34, "denied four additional motions sent to the address provided by [his ex-wife's] attorney," *id.*, "denied a motion to compel the production of a current address for plaintiff[']s ex-wife," *id.* ¶ 29, and "high jacked" "plaintiff's hearing[] for [a] motion to strike counterclaim" that occurred in Utah state court, *id.* ¶ 35. Setting aside that these

---

[4] The motion to dismiss this count would be granted even if *Rooker-Feldman* did not apply. Kee does not identify any act or omission by a Sonoma County defendant that deprived him of equal protection of the laws. He therefore fails adequately to plead a violation.

[5] This claim would be dismissed in any event because Kee fails to identify any individual actor alleged to have violated his rights, or to plead sufficient facts showing the existence of an unconstitutional policy carried out by the Sonoma defendants. Again, this claim is nothing more than a complaint that enforcement of the child support order was wrong because the Utah state court ruling precipitating enforcement itself was decided erroneously.

allegations do not appear to state a viable tort claim or any constitutional injury, they proceed from the premise that the Utah state court decisions entirely were wrong.

In short, all of Kee's claims are inextricably intertwined with his de facto appeal because he can obtain federal relief only to the extent the Utah state court proceedings were wrongly decided. Pursuant to the *Rooker-Feldman* doctrine, this Court accordingly lacks jurisdiction over each of Kee's claims.[6]

## V. CONCLUSION

A federal court may not exercise jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This is precisely the scenario Kee raises in the instant case. He seeks a de facto appeal of the Utah state court order signed on May 27, 2014. His claims accordingly are barred by the jurisdictional barrier of the *Rooker-Feldman* doctrine. Having reviewed the substantial documentary evidence Kee submitted alongside his complaint and opposition, it does not appear possible Kee can amend his pleading to overcome the jurisdictional defects. The motion to dismiss filed by SCDCSS, Marisa Wood, Jennifer Trauman, Rosie Soto, and Elizabeth Ryan will therefore be granted without leave to amend. *See Watkins v. Proulx*, 235 Fed. App'x 678, 679 (9th Cir. 2007) ("Because [plaintiff's] action is barred by *Rooker-Feldman*, amendment of his complaint would have been futile").

---

[6] Though they need not be reached, it is worth noting Kee's claims likely would fail on a number of additional bases. Again, the first two claims say nothing at all about the Sonoma defendants, and all four claims fail adequately to plead constitutional violations. *See Lee v. City of Los Angeles*, 250 F.3d 668, 681–82 (9th Cir. 2001) (noting that to make out a claim against a public official sued in their official capacity, a plaintiff must show he was deprived of constitutional rights by defendants acting under color of state law, that defendants have a custom or policy which amounts to deliberate indifference to constitutional rights, and that the policies were the proximate cause of the constitutional violations); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (noting that to hold an individual public official liable in his or her personal capacity for an action under 42 U.S.C. § 1983, the complaint must allege he or she committed specific acts of wrongdoing amounting to a violation of a constitutional right). Additionally, the Sonoma defendants likely are immune from suit because Kee's allegations make plain they were performing their official duty to enforce a duly registered child support order issued by a California state court.

CASE NO. 15-cv-05056-RS

9

Kee plainly disagrees with the decisions issued by the Utah state court. His proper recourse is an appeal within the Utah state court system—not a collateral attack via a federal court action.

**IT IS SO ORDERED**.

Dated: January 19, 2016

RICHARD SEEBORG
United States District Judge